UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

___

TIMOTHY LOUIS TAYLOR,

         Plaintiff,                        Case No. 1:16-cv-9

v.                                                    Honorable Janet T. Neff

UNKNOWN BURK, et al.,

         Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Barns. The Court will serve the complaint against Defendants Burk, Davis, Sowa and Baldwin.

**Discussion**

    I.       Factual allegations

Plaintiff Timothy Louis Taylor presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility, though the actions about which he complains occurred while he was housed at the Muskegon Correctional Facility (MCF). He sues the following MCF officials: Warden (unknown) Burk; Inspector P. Davis, Prisoner Counselor/Assistant Resident Unit Supervisor (ARUS) (unknown) Sowa; Mental Health Provider/Security Classification Committee Member (unknown) Baldwin; and Grievance Coordinator L. Barns.

Plaintiff alleges that, on March 12, 2015, he was in a physical altercation with an inmate nicknamed "World." (Compl., ECF NO. 1, PageID.4.) On the morning of March 13, 2015, another inmate told Plaintiff that World had taken out a hit on Plaintiff and that a Gangster Disciple member had taken money for the hit. That night, at about 10:30 p.m., a group of eight to ten gang members came to Plaintiff's cell. Two members went into Plaintiff's cell while Plaintiff's cellmate had the door open, taking about $20.00 worth of store items from Plaintiff's desk. The others surrounded Plaintiff in the hall. When an inmate came out of the next cell to find out what was going on, Plaintiff used the opportunity to slip into his cell and slam the door. For about an hour, gang members tried to jimmy the lock on his door and tried to get Plaintiff out. Plaintiff knew that at least five of the gang members resided in cells down the hall from him, and he feared facing them at breakfast. At 3:10 a.m. on March 14, 2015, Plaintiff went to the officer's desk and asked to be placed in protective custody. Plaintiff was told to write out a statement, providing the names of the gang members who chased him into his cell. Plaintiff indicated that he recognized eight to ten of

the gang members, but he only knew the nicknames of three of those gang members: Dodge, Southend, and Eastcoast. Plaintiff asked that the video from the camera in the area of his cell be reviewed to verify that he was chased, surrounded and robbed at his cell and to identify the other gang members. After reviewing Plaintiff's statement, the sergeant instructed staff to place Plaintiff in handcuffs and escort him to segregation.

On March 18, 2015, Plaintiff was taken from segregation to meet with Defendant Sowa. Defendant Sowa asked Plaintiff to provide a verbal account of what happened, which Plaintiff did, again asking that the video be reviewed. He also asked Plaintiff for the identity of the man who put out the hit and the man who accepted the hit agreement. Plaintiff told Defendant Sowa that he knew World only by his nickname and that he did not know who had taken the contract. Plaintiff, however, repeated the nicknames of three of the ten gang members who surrounded him. Defendant Sowa told Plaintiff that he would be seen by the Security Classification Committee (SCC) on March 20, so he had two days to come up with the names, or his protection request would be denied. After talking to Defendant Sowa, Plaintiff wrote a letter to Defendants Warden Burk and Inspector Davis, detailing the incident and asking that the video be reviewed. No Defendant asked Plaintiff to look at the inmate photo book for Unit One, to help Plaintiff identify the other prisoners.

The SCC, composed of Defendants Sowa, Davis and Baldwin, met on March 20, 2015. Defendant Davis told Plaintiff that he had not reviewed either the written reports or the video. He demanded that Plaintiff repeat his oral account and identify the individuals who ordered and accepted the hit. Plaintiff responded that he did not know their real names and only knew World, the man who had ordered the hit, by sight. Defendant Davis responded that he did not believe Plaintiff because, if a hit had been issued, he would have known about it. He then ordered Plaintiff

back to general population (GP). Plaintiff protested, asking, "What if something happens to me?" (*Id.*, PageID.10.) Defendant Davis responded, "Then I guess we will know you told the truth." (*Id.*) Plaintiff was released from protective custody that day. He immediately submitted a grievance to Defendant Barns. On March 24, 2015, Defendant Barns returned the grievance for minor corrections. Plaintiff made the corrections and gave the grievance back. He never received a grievance identifier.

On April 6, 2015, Plaintiff was cornered in the unit bathroom by four gang members, two of whom had weapons. However, the assault was interrupted when two other inmates who knew Plaintiff came into the bathroom. On April 9, 2015, Plaintiff was placed in segregation on a misconduct charge for possession of a weapon. Plaintiff sent a kite to Defendant Davis the following day, which he gave to Defendant Sowa to read and deliver. Plaintiff also filed a grievance. On April 25, Defendant Barns returned the grievance to Plaintiff for corrections. Plaintiff made the corrections and refiled the grievance on April 29, 2015. On May 5, Defendant Barns rejected the grievance, stating that it was untimely.

The SCC (Defendants Davis, Sowa and Baldwin) held a hearing on the misconduct charge for possession of a weapon on April 24, 2015. At the proceeding, Plaintiff denied that the knife was his, but he stated that, if he had possessed a weapon, it would have been for protection. Plaintiff told Defendant Davis that he had been cornered in the shower and nearly attacked by four gang members. Plaintiff explained that he had written a kite and given it to Defendant Sowa to deliver to Defendant Davis. Defendant Sowa stated that he had placed it in Defendant Davis' box. Defendant Davis smiled and said that he had been on vacation and had not read it. He also said that he had not read any of the other kites or reviewed the video of the March 13, 2015 incident. Davis

said that he did not need any more information to decide and that he was releasing Plaintiff to GP. After being escorted back to his cell, Plaintiff wrote a kite to Defendant Davis, stating,

> Inspector: the situation as it stands is this . . . if you place me back in [general population] I am going to kill or try to kill one or both of the guys I mentioned or they are going to kill me . . . if you are OK with this then it is what it is.

(*Id.*, PageID.13.) Plaintiff gave the kite to an officer to deliver to Defendant Davis. The officer returned ten minutes later with instructions to write Plaintiff a misconduct ticket for threatening behavior. On April 24, 2015, Plaintiff wrote a grievance against the SCC. Defendant Barns rejected the grievance. Plaintiff appealed, but no response was received. On May 7, 2015, Plaintiff again saw the SCC. Defendant Davis once again told Plaintiff that they were releasing him back to GP. Plaintiff asked why Defendants would release him to GP, knowing of the threat to his life. He replied, "There is no 'hit' on you, I would know if it was." (*Id.*, PageID.15.) Plaintiff stopped Defendant Sowa on May 8, 2015, while Defendant Sowa was making rounds. Defendant Sowa again stated that Plaintiff would not be transferred. Plaintiff asked, "Why are you, Inspector Davis, and Ms. Baldwin releasing me back to G[P] when I have just been found guilty of threatening behavior?" (*Id.*) Defendant Sowa responded, "Go get them Bucko, we'll be here when you get back." (*Id.*)

On May 10, 2015, Plaintiff was released to GP. On May 13, 2015, Plaintiff approached ARUS Calvin, seeking assistance. Calvin informed Plaintiff that he could do nothing, but he promised that, if Plaintiff wrote a letter to the warden, Calvin would personally take it to the control center and place it in the warden's mail. Plaintiff was called to the control center around

lunch time on May 10, 2015,[1] in order to see Defendant Warden Burk. Plaintiff told Burk everything that had happened, and told her that he had learned the real name of the person who had put the hit on him (Kincaid) and the nickname of the person who had taken the money for the hit (Brightmore). Burk stated that she was familiar with prisoner Kincaid. But she told Plaintiff that she would stand by the SCC decision and that Plaintiff would not be transferred soon. On the evening of May 13, 2015, as he left his cell to line up for dinner, Plaintiff was assaulted and stabbed in the left side of his head and neck by three gang members. Plaintiff ran toward the officer's desk, but no officer was present. When an officer arrived two or three minutes later, the attackers fled, and Plaintiff was sent to heathcare. After being treated for the large hole in his left ear and the three-inch slice on his neck, Plaintiff was taken to segregation. Plaintiff was never interviewed by an inspector or SCC member about the incident, but he was transferred to another prison on May 19, 2015.

Plaintiff contends that Defendants Sowa and Davis violated his right to due process by failing to follow MDOC policies requiring that they investigate his request for protective custody and place a Special Problem Offender Notice on Plaintiff's file with respect to the two assailants. Plaintiff also alleges that Defendant Barns violated his right to due process by interfering with Plaintiff's grievances. He alleges that Defendant Burk violated his right to due process by failing to conduct an investigation, as required by policy. Moreover, Plaintiff contends that Defendants Burk, Davis, Sowa and Baldwin violated his due process and Eighth Amendment rights when they were deliberately indifferent to his need for protective custody.

---

[1] Plaintiff records the date of the interview with Warden Burk as May 10, 2015, though it appears from the surrounding allegations, that he meant to write May 13, 2015. Nevertheless, the Court has used the date written in the complaint.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendant Barns, other than his claim that Barns failed to process his grievances and improperly rejected other grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Barns engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Barns.

Upon review, the Court concludes that Plaintiff has alleged sufficient facts to warrant service of the complaint on the remaining Defendants.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Barns will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Burk, Davis, Sowa and Baldwin.

An Order consistent with this Opinion will be entered.


Dated:  February 17, 2016           /s/ Janet T. Neff
                                    Janet T. Neff
                                    United States District Judge