UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMOTHY TAYLOR #212535,

                 Plaintiff,                                    Hon. Janet T. Neff

v.                                              Case No. 1:16-cv-9

SHERRY BURT, et al.,

                 Defendants.

_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on Defendants' Motion for Summary Judgment.  (ECF No. 17).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

       Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility, though the actions about which he complains occurred while he was housed at the Muskegon Correctional Facility (MCF).  Plaintiff brought the present action against the following MCF officials:  Warden (unknown) Burt; Inspector P. Davis, Prisoner Counselor/Assistant Resident Unit Supervisor (ARUS) (unknown) Sowa; Mental Health Provider/Security Classification Committee Member (unknown) Baldwin; and Grievance Coordinator L. Barns.  Plaintiff makes the following allegations in his complaint.

       On March 12, 2015, Plaintiff was in a physical altercation with an inmate nicknamed "World."  On the morning of March 13, 2015, another inmate told Plaintiff that World had taken out a

hit on Plaintiff and that a Gangster Disciple member had taken money for the hit. That night, at about 10:30 p.m., a group of eight to ten gang members came to Plaintiff's cell. Two members went into Plaintiff's cell while Plaintiff's cellmate had the door open, taking about $20.00 worth of store items from Plaintiff's desk. The others surrounded Plaintiff in the hall. When an inmate came out of the next cell to find out what was going on, Plaintiff used the opportunity to slip into his cell and slam the door. For about an hour, gang members tried to jimmy the lock on his door and tried to get Plaintiff out. Plaintiff knew that at least five of the gang members resided in cells down the hall from him, and he feared facing them at breakfast.

On March 14, 2015, Plaintiff went to the officer's desk and asked to be placed in protective custody. Plaintiff was told to write out a statement, providing the names of the gang members who chased him into his cell. Plaintiff indicated that he recognized eight to ten of the gang members, but he only knew the nicknames of three of those gang members: Dodge, Southend, and Eastcoast. Plaintiff asked that the video from the camera in the area of his cell be reviewed to verify that he was chased, surrounded and robbed at his cell and to identify the other gang members. After reviewing Plaintiff's statement, the sergeant instructed staff to place Plaintiff in handcuffs and escort him to segregation.

On March 18, 2015, Plaintiff was taken from segregation to meet with Defendant Sowa. Sowa asked Plaintiff to provide a verbal account of what happened, which Plaintiff did, again asking that the video be reviewed. Sowa asked Plaintiff for the identity of the man who put out the hit and the man who accepted the hit agreement. Plaintiff told Sowa that he knew World only by his nickname and that he did not know who had taken the contract. Plaintiff, however, repeated the nicknames of three of the ten gang members who surrounded him. Sowa told Plaintiff that he would meet with the Security

Classification Committee (SCC) on March 20, so he had two days to come up with the names, or his protection request would be denied. After talking to Sowa, Plaintiff wrote a letter to Defendant Warden Burt and Inspector Davis, detailing the incident and asking that the video be reviewed. No Defendant asked Plaintiff to look at the inmate photo book for Unit One, to help Plaintiff identify the other prisoners.

The SCC, composed of Defendants Sowa, Davis and Baldwin, met on March 20, 2015. Davis told Plaintiff that he had not reviewed the written reports or the video. He demanded that Plaintiff repeat his oral account and identify the individuals who ordered and accepted the hit. Plaintiff responded that he did not know their real names and only knew World, the man who had ordered the hit, by sight. Defendant Davis responded that he did not believe Plaintiff because, if a hit had been issued, Davis would have known about it. He then ordered Plaintiff back to general population (GP). Plaintiff protested, asking, "What if something happens to me?" Davis responded, "Then I guess we will know you told the truth." Plaintiff was released from protective custody that day.

On April 6, 2015, Plaintiff was cornered in the unit bathroom by four gang members, two of whom had weapons. However, the assault was interrupted when two other inmates entered the bathroom. On April 9, 2015, Plaintiff was placed in segregation on a misconduct charge for possession of a weapon. The SCC (Defendants Davis, Sowa and Baldwin) held a hearing on the misconduct charge for possession of a weapon on April 24, 2105. At the proceeding, Plaintiff denied that the knife was his, but he stated that, if he had possessed a weapon, it would have been for protection. Plaintiff told Davis that he had been cornered in the shower and nearly attacked by four gang members. Plaintiff explained that he had written a kite and given it to Sowa to deliver to Davis. Sowa stated that he had placed it in Davis' box. Davis stated that he had been on vacation and had not read it. He also said that he had not

read any of the other kites or reviewed the video of the March 13, 2015 incident.  Davis said that he did

not need any more information and was releasing Plaintiff to GP.  After being escorted back to his cell,

Plaintiff wrote a kite to Defendant Davis, stating,

> Inspector: the situation as it stands is this . . . if you place me back in
> [general population] I am going to kill or try to kill one or both of the
> guys I mentioned or they are going to kill me . . .  if you are OK with this
> then it is what it is.

Plaintiff gave the kite to an officer to deliver to Defendant Davis.  The officer returned

ten minutes later with instructions to write Plaintiff a misconduct ticket for threatening behavior.  On

May 7, 2015, Plaintiff again saw the SCC.  Davis once again told Plaintiff that they were releasing him

back to GP.  Plaintiff asked why Defendants would release him to GP, knowing of the threat to his life.

Davis replied, "There is no "hit" on you, I would know if it was."  Plaintiff stopped Defendant Sowa

on May 8, 2015, while Sowa was making rounds.  Sowa again stated that Plaintiff would not be

transferred.  Plaintiff asked, "Why are you, Inspector Davis, and Ms. Baldwin releasing me back to G[P]

when I have just been found guilty of threatening behavior?"  Sowa responded, "Go get them Bucko,

we'll be here when you get back."

On May 10, 2015, Plaintiff was released to GP.  On May 13, 2015, Plaintiff approached

ARUS Calvin, seeking assistance.  Calvin informed Plaintiff that he could do nothing, but he promised

that, if Plaintiff wrote a letter to the warden, Calvin would personally take it to the control center and

place it in the warden's mail.  Plaintiff was called to the control center around lunch time on May 10,

2015,[1] in order to see Warden Burt.  Plaintiff told Burt everything that had happened, and told her that

he had learned the real name of the person who had put the hit on him (Kincaid) and the nickname of

---

[1]Plaintiff records the date of the interview with Warden Burt as May 10, 2015, though it appears from the surrounding
allegations, that he intended May 13, 2015.  Nevertheless, the Court has used the date written in the complaint.

the person who had taken the money for the hit (Brightmore).  Burt stated that she was familiar with prisoner Kincaid.  But she told Plaintiff that she would stand by the SCC decision and that Plaintiff would not be transferred soon.  On the evening of May 13, 2015, as he left his cell to line up for dinner, Plaintiff was assaulted and stabbed in the left side of his head and neck by three gang members.  Plaintiff ran toward the officer's desk, but no officer was present.  When an officer arrived two or three minutes later, the attackers fled, and Plaintiff was sent to heathcare.  After being treated for the large hole in his left ear and the three-inch slice on his neck, Plaintiff was taken to segregation.  Plaintiff was never interviewed by an inspector or SCC member about the incident, but was instead transferred to another prison on May 19, 2015.

Plaintiff contends that Defendants Sowa and Davis violated his right to due process by failing to follow MDOC policies requiring that they investigate his request for protective custody and place a Special Problem Offender Notice on Plaintiff's file with respect to the two assailants.  Plaintiff also alleges that Defendant Barns violated his right to due process by interfering with his grievances.  Plaintiff alleges that Defendant Burt violated his right to due process by failing to conduct an investigation, as required by policy.  Plaintiff further contends that Defendants Burt, Davis, Sowa and Baldwin violated his due process and Eighth Amendment rights when they were deliberately indifferent to his need for protective custody.  Plaintiff's claims against Defendant Barns were dismissed on screening. Defendants Burt, Davis, Sowa, and Baldwin now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d

at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).


## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.  Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the

issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V.

The grievance policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants have submitted an affidavit executed by Loretta Barnes, the Grievance Coordinator for the Muskegon Correctional Facility. (PageID.163-66). Defendants have also submitted additional documentary evidence as discussed below. Plaintiff has also submitted an affidavit in response to Defendants' motion. (PageID.151-52). This evidence reveals that Plaintiff pursued the following grievances.

A.      MCF-2015-05-0434-17c

Plaintiff initiated this grievance on April 28, 2015, alleging that a prison official refused to allow him to use the restroom and also made an unwelcomed sexual comment. (PageID.163-64, 168). This grievance does not concern the allegations in Plaintiff's complaint and cannot, therefore, serve to exhaust any of Plaintiff's remaining claims.

B.      MCF-2015-05-0435-28e

Plaintiff filed this grievance on April 22, 2015, against Defendant Sowa. (PageID.152, 170). This grievance concerned a complaint by Plaintiff that his request to be placed in protective custody, following an attempted assault by other inmates on March 13, 2015, was rejected. (PageID.170). Plaintiff asserts in the grievance that he spoke with Defendant Sowa the following day in an attempt to resolve the matter. (PageID.170). This grievance was rejected as untimely. (PageID.169-70). When "a grievance is denied as untimely, it is not properly exhausted." *Martin v. Bergh*, 2008 WL 4283517 at *5 (W.D. Mich., Sept. 12, 2008) (citation omitted); *Harris v. Brown*, 2011 WL 2221167 at *1 (E.D. Mich., Apr. 20, 2011) ("[w]hen a prisoner's grievance is rejected by the prison as untimely, that claim is not properly exhausted under 42 U.S.C. § 1997e").

Plaintiff attempts to avoid this conclusion by arguing that after submitting the grievance on April 22, 2015, it was returned to him "for corrections to be made." (PageID.152). Plaintiff asserts that he made the corrections and resubmitted the grievance on April 29, 2015. (PageID.152). The implication of Plaintiff's argument is that had the grievance been accepted for filing when originally submitted, it would have been timely. This argument fails because even had the grievance been accepted for filing on April 22, 2015, it was untimely. As noted above, MDOC Policy provides that a

Step I grievance has to be submitted with five days after attempting to resolve the matter with staff.  By the time Plaintiff initially submitted the grievance more than one month had passed since Plaintiff spoke with Defendant Sowa to try to resolve the matter.  (PageID.152, 170).  Accordingly, this grievance cannot serve to exhaust any of Plaintiff's remaining claims.

        C.      MCF-2015-05-0436-28a

Plaintiff submitted this grievance again challenging the rejection of his request to be placed in protective custody following the March 13, 2015 incident described above.  (PageID.164, 172).  This grievance was rejected as duplicative of grievance MCF-2015-05-0435-28e discussed in the preceding section.  (PageID.171).  MDOC grievance policy clearly prohibits prisoners from filing a grievance which "raises issues that are duplicative of those raised in another grievance filed by the grievant."  Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ G.  A grievance denied as duplicative cannot serve to exhaust any subsequently asserted claim.  *See, e.g., Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 890 (6th Cir., May 1, 2009).  Accordingly, this grievance cannot serve to properly exhaust any of Plaintiff's remaining claims.

D.      MCF-2015-05-0470-03b

Plaintiff submitted this grievance on May 9, 2015, against the Security Classification Committee (Defendants Sowa, Davis, and Baldwin) challenging its decision to release him back to the general population following his conviction for threatening behavior.  (PageID.177).  The response by prison officials to this grievance is unclear.  As noted above, Plaintiff was transferred to another facility on May 19, 2015, after being attacked several days earlier.  Plaintiff's Step I grievance was simply returned to Plaintiff on June 10, 2015, with the notation "prisoner transferred on 5/19/15."  (PageID.177).  Loretta Barnes asserts that "[n]o Step II grievance was requested by Taylor."  (PageID.164).  Plaintiff counters by submitting an affidavit in which he asserts that he did, in fact, request from Barnes a Step II grievance which was never provided.  (PageID.152).

To properly exhaust a claim, Plaintiff need only avail himself of his available administrative remedies.  If prison officials refused Plaintiff's request for a grievance form, a matter on which there exists a factual dispute, the grievance process was unavailable to Plaintiff and the claim(s) asserted in the subject grievance cannot be dismissed on failure to exhaust grounds.  *See, e.g., Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").  Thus, Defendants Sowa, Davis, and Baldwin cannot meet their burden to show that Plaintiff has not properly exhausted the claims asserted in this particular grievance.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment be denied as to Plaintiff's claim challenging the decision by Defendants Sowa, Davis, and Baldwin, on or about May 7, 2015, to release Plaintiff back to the general population following his conviction for threatening behavior.

E.      MCF-2015-05-0495-03b

Plaintiff submitted this grievance on May 15, 2015, again challenging the decision to place him back into general population.  (PageID.179).  This grievance was rejected as duplicative of grievance MCF-2015-05-0470-03b discussed in the preceding section.  Accordingly, this grievance cannot serve to properly exhaust any of Plaintiff's remaining claims.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 17), be **granted in part and denied in part**.  Specifically, the undersigned recommends that Plaintiff's claims be dismissed for failure to exhaust administrative remedies except his claim challenging the decision by Defendants Sowa, Davis, and Baldwin, on or about May 7, 2015, to release Plaintiff back to the general population following his conviction for threatening behavior.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  July 20, 2016                         /s/ Ellen S. Carmody
                                             ELLEN S. CARMODY
                                             United States Magistrate Judge