UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY TAYLOR #212535,

    Plaintiff,                                  Hon. Janet T. Neff

v.                                             Case No. 1:16-cv-9

SHERRY BURT, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 64), and Plaintiff's Objection to Defendants' Use of Deposition, (ECF No. 55). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied**, Defendants' motion be **granted**, and this action **terminated**.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility, though the actions about which he complains occurred while he was housed at the Muskegon Correctional Facility (MCF). Plaintiff brought the present action against the following MCF officials: Warden (unknown) Burt; Inspector P. Davis, Prisoner Counselor/Assistant Resident Unit Supervisor (ARUS) (unknown) Sowa; Mental Health Provider/Security Classification Committee Member (unknown) Baldwin; and Grievance Coordinator L. Barns. Plaintiff makes the following allegations in his complaint.

On March 12, 2015, Plaintiff was in a physical altercation with an inmate nicknamed "World." On the morning of March 13, 2015, another inmate told Plaintiff that World had taken out a hit on Plaintiff and that a Gangster Disciple member had taken money for the hit. That night, at about 10:30 p.m., a group of eight to ten gang members came to Plaintiff's cell. Two members went into Plaintiff's cell while Plaintiff's cellmate had the door open, taking about $20.00 worth of store items from Plaintiff's desk. The others surrounded Plaintiff in the hall. When an inmate came out of the next cell to find out what was going on, Plaintiff used the opportunity to slip into his cell and slam the door. For about an hour, gang members tried to jimmy the lock on his door and tried to get Plaintiff out. Plaintiff knew that at least five of the gang members resided in cells down the hall from him, and he feared facing them at breakfast.

On March 14, 2015, Plaintiff went to the officer's desk and asked to be placed in protective custody. Plaintiff was told to write out a statement, providing the names of the gang members who chased him into his cell. Plaintiff indicated that he recognized eight to ten of the gang members, but he only knew the nicknames of three of those gang members: Dodge, Southend, and Eastcoast. Plaintiff asked that the video from the camera in the area of his cell be reviewed to verify that he was chased, surrounded and robbed at his cell and to identify the other gang members. After reviewing Plaintiff's statement, the sergeant instructed staff to place Plaintiff in handcuffs and escort him to segregation.

On March 18, 2015, Plaintiff was taken from segregation to meet with Defendant Sowa. Sowa asked Plaintiff to provide a verbal account of what happened, which Plaintiff did, again asking that the video be reviewed. Sowa asked Plaintiff for the identity of the man who put out the hit and the man who accepted the hit agreement. Plaintiff told Sowa that he knew World only by his nickname and

that he did not know who had taken the contract. Plaintiff, however, repeated the nicknames of three of the ten gang members who surrounded him. Sowa told Plaintiff that he would meet with the Security Classification Committee (SCC) on March 20, so he had two days to come up with the names, or his protection request would be denied. After talking to Sowa, Plaintiff wrote a letter to Defendant Warden Burt and Inspector Davis, detailing the incident and asking that the video be reviewed. No Defendant asked Plaintiff to look at the inmate photo book for Unit One, to help Plaintiff identify the other prisoners.

The SCC, composed of Defendants Sowa, Davis and Baldwin, met on March 20, 2015. Davis told Plaintiff that he had not reviewed the written reports or the video. He demanded that Plaintiff repeat his oral account and identify the individuals who ordered and accepted the hit. Plaintiff responded that he did not know their real names and only knew World, the man who had ordered the hit, by sight. Defendant Davis responded that he did not believe Plaintiff because, if a hit had been issued, Davis would have known about it. He then ordered Plaintiff back to general population (GP). Plaintiff protested, asking, "What if something happens to me?" Davis responded, "Then I guess we will know you told the truth." Plaintiff was released from protective custody that day.

On April 6, 2015, Plaintiff was cornered in the unit bathroom by four gang members, two of whom had weapons. However, the assault was interrupted when two other inmates entered the bathroom. On April 9, 2015, Plaintiff was placed in segregation on a misconduct charge for possession of a weapon. The SCC (Defendants Davis, Sowa and Baldwin) held a hearing on the misconduct charge for possession of a weapon on April 24, 2105. At the proceeding, Plaintiff denied that the knife was his, but he stated that, if he had possessed a weapon, it would have been for protection. Plaintiff told Davis that he had been cornered in the shower and nearly attacked by four gang members. Plaintiff explained

that he had written a kite and given it to Sowa to deliver to Davis.  Sowa stated that he had placed it in Davis' box.  Davis stated that he had been on vacation and had not read it.  He also said that he had not read any of the other kites or reviewed the video of the March 13, 2015 incident.  Davis said that he did not need any more information and was releasing Plaintiff to GP.  After being escorted back to his cell, Plaintiff wrote a kite to Defendant Davis, stating,

> Inspector: the situation as it stands is this . . . if you place me back in [general population] I am going to kill or try to kill one or both of the guys I mentioned or they are going to kill me . . . if you are OK with this then it is what it is.

Plaintiff gave the kite to an officer to deliver to Defendant Davis.  The officer returned ten minutes later with instructions to write Plaintiff a misconduct ticket for threatening behavior.  On May 7, 2015, Plaintiff again saw the SCC.  Davis once again told Plaintiff that they were releasing him back to GP.  Plaintiff asked why Defendants would release him to GP, knowing of the threat to his life.  Davis replied, "There is no "hit" on you, I would know if it was."  Plaintiff stopped Defendant Sowa on May 8, 2015, while Sowa was making rounds.  Sowa again stated that Plaintiff would not be transferred.  Plaintiff asked, "Why are you, Inspector Davis, and Ms. Baldwin releasing me back to G[P] when I have just been found guilty of threatening behavior?"  Sowa responded, "Go get them Bucko, we'll be here when you get back."

On May 10, 2015, Plaintiff was released to GP.  On May 13, 2015, Plaintiff approached ARUS Calvin, seeking assistance.  Calvin informed Plaintiff that he could do nothing, but he promised that, if Plaintiff wrote a letter to the warden, Calvin would personally take it to the control center and place it in the warden's mail.  Plaintiff was called to the control center around lunch time on May 10,

2015,[1] in order to see Warden Burt. Plaintiff told Burt everything that had happened, and told her that he had learned the real name of the person who had put the hit on him (Kincaid) and the nickname of the person who had taken the money for the hit (Brightmore). Burt stated that she was familiar with prisoner Kincaid. But she told Plaintiff that she would stand by the SCC decision and that Plaintiff would not be transferred soon. On the evening of May 13, 2015, as he left his cell to line up for dinner, Plaintiff was assaulted and stabbed in the left side of his head and neck by three gang members. Plaintiff ran toward the officer's desk, but no officer was present. When an officer arrived two or three minutes later, the attackers fled, and Plaintiff was sent to healthcare. After being treated for the large hole in his left ear and the three-inch slice on his neck, Plaintiff was taken to segregation. Plaintiff was never interviewed by an inspector or SCC member about the incident, but was instead transferred to another prison on May 19, 2015.

Plaintiff contends that Defendants Sowa and Davis violated his right to due process by failing to follow MDOC policies requiring that they investigate his request for protective custody and place a Special Problem Offender Notice in Plaintiff's file with respect to the two assailants. Plaintiff also alleges that Defendant Barns violated his right to due process by interfering with his grievances. Plaintiff alleges that Defendant Burt violated his right to due process by failing to conduct an investigation, as required by policy. Plaintiff further contends that Defendants Burt, Davis, Sowa and Baldwin violated his due process and Eighth Amendment rights when they were deliberately indifferent to his need for protective custody. Plaintiff's claims against Defendant Barns were dismissed on screening and many other of Plaintiff's claims were subsequently dismissed for failure to exhaust administrative remedies. At this juncture, the only claims remaining in this matter are Plaintiff's claims

---

[1] Plaintiff records the date of the interview with Warden Burt as May 10, 2015, though it appears from the surrounding allegations, that he intended May 13, 2015. Nevertheless, the Court has used the date written in the complaint.

challenging the decision by Defendants Sowa, Davis, and Baldwin, on or about May 7, 2015, to release Plaintiff back to the general population following his conviction for threatening behavior. Defendants Davis, Sowa, and Baldwin now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

# ANALYSIS

### I. Plaintiff's Objection to the Use of his Deposition Testimony

Following his deposition, Plaintiff requested that Defendants' counsel provide him, at no cost, a copy of the deposition transcript. Defendants' counsel refused, prompting Plaintiff to move the Court to preclude Defendant from introducing or relying upon testimony from his deposition. Plaintiff's motion fails for two reasons. First, Plaintiff's motion is without merit. Plaintiff is responsible for his own litigation expenses. *See, e.g., Dujardine v. Michigan Department of Corrections*, 2009 WL 3401172 at *1 (W.D. Mich., Oct. 19, 2009). Second, Defendants have not introduced or otherwise relied upon Plaintiff's deposition testimony in support of their motion for summary judgment. The undersigned recommends, therefore, that Plaintiff's motion be denied.

### II. Defendants' Motion for Summary Judgment

Defendants style their motion as a motion for summary judgment under Federal Rule of Civil Procedure 56, but also assert therein a claim for qualified immunity. Defendants appear to misunderstand qualified immunity and, moreover, appear to be attempting to improperly shift the burden of proof in this matter to Plaintiff. While Defendants are correct that Plaintiff would bear the burden to defeat an appropriate assertion of qualified immunity, *see, e.g., Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), Defendants have not advanced a legitimate claim of qualified immunity. Assertions of qualified immunity are appropriate where a defendant argues that the right a plaintiff seeks to enforce was not clearly established or where a defendant asserts that he reasonably believed his actions were lawful under existing law. Here, Defendants merely assert that Plaintiff's claims are either not cognizable as a matter of law or that, based upon the evidence submitted, there is no factual dispute

necessitating a trial on the merits. In other words, Defendants are simply seeking dismissal under Federal Rule of Civil Procedure 12 or summary judgment under Federal Rule of Civil Procedure 56, rules under which Defendants bear the burden to show entitlement to the requested relief.

As noted above, the only claims remaining in this matter are Plaintiff's claims challenging the decision by Defendants Sowa, Davis, and Baldwin, on or about May 7, 2015, to release Plaintiff back to the general population following his conviction for threatening behavior. With respect to this incident, Plaintiff has asserted substantive due process, procedural due process, and eighth amendment claims, each of which is examined below.

A.     Substantive Due Process

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action. In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court

noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Albright*, 510 U.S. at 271-72. The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Albright*, 510 U.S. at 274-75.

Simply put, Plaintiff's claim that returning him to general population placed him at risk of physical attack from another inmate is sufficiently protected by the Eighth Amendment pursuant to which Plaintiff can assert a failure to protect claim. *See, e.g., Rogers v. Caruso*, 2012 WL 642345 at *3 (W.D. Mich., Feb. 27, 2012) ("[w]here a prisoner complains about a prison official's failure to protect the prisoner from harm. . ., the claim is more properly under the Eighth Amendment than the substantive due process provision of the Fourteenth Amendment, since the former is a more explicit textual source of constitutional protection"). Accordingly, the undersigned recommends that Plaintiff's remaining substantive due process claims be dismissed.

B. Procedural Due Process

Plaintiff asserts that the decision by Defendants to return him to general population violated his Fourteenth Amendment right to procedural due process. Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or a constitutionally protected liberty or property interest the state must provide the individual notice and an opportunity to be heard. *See Paterek v. Village of Armada, Michigan*, 801 F.3d 630, 649 (6th Cir. 2015). To prevail on his procedural due process claim, Plaintiff must establish: (1) the existence of a constitutionally protected liberty or property interest; (2) a deprivation of that interest; and (3) that he was not afforded adequate procedural protection. *Id.*

Defendants have submitted evidence that prior to making the decision to return Plaintiff to general population, a hearing was conducted on the matter. (ECF No. 65-1 at PageID.421-22, 429). Plaintiff does not refute this evidence, but instead concedes that Defendants met with him prior to making the decision in question. (ECF No. 75 at PageID.484). Thus, even assuming Plaintiff could satisfy the first two elements noted above, his claim nevertheless fails because he was afforded a hearing, prior to the decision to return him to general population, which satisfied the requirements of due process. *See, e.g., Martinson v. Regents of University of Michigan*, 562 Fed. Appx. 365, 372 (6th Cir., Apr. 4, 2014). Accordingly, the undersigned recommends that Defendants be granted summary judgment as to Plaintiff's remaining procedural due process claims.

C. Eighth Amendment

Plaintiff alleges that by returning him to general population, Defendants ignored the risk that he would be assaulted by another prisoner in violation of his Eighth Amendment rights. To prevail

on his claim that Defendants failed to protect him, Plaintiff must establish that Defendants were deliberately indifferent to "a substantial risk of serious harm." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

The evidence before the Court, interpreted in Plaintiff's favor, reveals the following. There is no dispute that on March 14, 2015, Plaintiff reported that he was involved in an altercation with another prisoner who allegedly owed Plaintiff money. (ECF No. 65-1 at PageID.418-19; ECF No. 75 at PageID.481-82; ECF No. 75-1 at PageID.489). Plaintiff further reported that a "hit" was placed on him. (ECF No. 65-1 at PageID.418-19; ECF No. 75 at PageID.481-82; ECF No. 75-1 at PageID.489). Plaintiff was unwilling to provide prison officials with the names of any of the individuals allegedly involved in these incidents. (ECF No. 65-1 at PageID.418-19, 433-34; ECF No. 75 at PageID.481-82; ECF No. 75-1 at PageID.489). Defendants Davis and Sowa assert that Plaintiff did not ask to be placed in protective custody, but instead requested a transfer to a different facility. (ECF No. 65-1 at PageID.418-19, 434-35; ECF No. 75-1 at PageID.489). Plaintiff does not refute the assertion that he requested a transfer in response to this alleged threat. Plaintiff's request for protection and/or transfer was denied because the alleged threat could not be verified and, furthermore, because Defendants Davis and Sowa determined that Plaintiff was not seeking protection, but was instead trying to manipulate a transfer, which constitutes a security concern. (ECF No. 65-1 at PageID.418-21, 434-35; ECF No. 75-1 at PageID.489).

Plaintiff was subsequently convicted of possessing a weapon and threatening behavior for which he was sentenced to segregation. (ECF No. 65-1 at PageID.419-20; ECF No. 75 at PageID.483-84; ECF No. 75-5 at PageID.501-03). Three days before Plaintiff was scheduled to be released from segregation, a Security Classification Committee (SCC) panel, comprised of Defendants Sowa, Davis, and Baldwin, conducted a hearing to determine whether Plaintiff would be returned to the general prison population or reclassified to segregation. (ECF No. 65-1 at PageID.421-22; ECF No. 75 at PageID.484; ECF No. 75-5 at PageID.506). The decision was made to return Plaintiff to general population and then transfer him to another facility. (ECF No. 65-1 at PageID.421-23; ECF No. 75 at PageID.484; ECF No. 75-5 at PageID.506). Before Plaintiff could be transferred, however, he was assaulted by another prisoner giving rise to the present action.

Plaintiff's claim fails because there is no evidence to support the proposition that Defendants knew (or even should have known) that Plaintiff faced a threat to his health or safety if returned to general population. Plaintiff was unable to identify any of the inmates who allegedly threatened him. Prison officials further concluded that Plaintiff's request for protection was instead merely a manipulative attempt to secure a transfer to a different facility. In sum, Plaintiff cannot establish that Defendants failed to act reasonably in this matter. Accordingly, the undersigned recommends that Defendants be granted summary judgment as to Plaintiff's failure to protect claims.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Plaintiff's Objection to Defendants' Use of Deposition</u>, (ECF No. 55), be **denied**; <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 64), be **granted**, and this action **terminated**. The undersigned further recommends

that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: May 24, 2017     /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge